FAX FILED
May 4, 2015
2015 MAY -8 A 9:13
Janette Gill

**DIVISION C**

STATE FARM FIRE AND CASUALTY COMPANY, as Real Party in Interest and Subrogee of M. Gene Haymon

NO: 91140    DIV:

30TH JUDICIAL DISTRICT COURT

VERSUS

PARISH OF VERNON

TITEFLEX CORPORATION, GASTITE DIVISION

STATE OF LOUISIANA

### PETITION FOR DAMAGES

NOW INTO COURT, through undersigned counsel, comes the Plaintiff, STATE FARM FIRE AND CASUALTY COMPANY, a foreign insurance company, authorized to do and doing business in the State of Louisiana, as Real Party in Interest and Subrogee of M. Gene Haymon, which respectfully represents:

1.

Made Defendant herein is:

(a) TITEFLEX CORPORATION, GASTITE DIVISION, a foreign corporation, domiciled in Massachusetts, authorized to do and doing business in the State of Louisiana, and, upon information and belief, engaged in the business of manufacturing, designing, selling and distributing flexible stainless steel tubing ("CSST") in the United States of America, including the State of Louisiana,

which is indebted unto plaintiff for the following, to wit:

2.

The "Property" is located at 150 Mockingbird Lane, Leesville, Louisiana 71446-7672.

3.

Venue is proper in Vernon Parish, Louisiana pursuant to LSA-C.C.P. Art. 72 for the reason that the occurrence-giving rise to this lawsuit is located in Vernon Parish, Louisiana.

4.

The Court has jurisdiction over Defendant for the reason that Defendant is a corporation which is qualified to do business in the State of Louisiana and, at the time this cause of action accrued, were conducting business in this state. The Court has jurisdiction over the controversy for the reason that the damages sued for are within the jurisdictional limits of this Court.



EXHIBIT "1" Pg 1 of 8

5.

This case involves a products liability cause of action which arises from the design, manufacturing, and marketing defects of a Titeflex Corporation, Gastite Division, manufactured corrugated stainless steel tubing ("CSST") (hereinafter referred to as "product" or "product in question"). The product is sold under conditions set by Titeflex to retailers of the product. The CSST product was designed and intended as a substitute flexible gas delivery system to the more robust black iron pipe.

6.

At all times relevant to this matter, Defendant TITEFLEX was engaged in the business of designing, manufacturing, marketing, and distributing the CSST product in Louisiana, as well as across the United States, where the product has now been installed in well over six million (6,000,000) homes and businesses.

7.

At all times relevant hereto, M. Gene Haymon was the owner of the property located at 150 Mockingbird Lane, Leesville, Vernon Parish, Louisiana (the "Property"). At all times relevant to this lawsuit, Defendant TITEFLEX was the manufacturer of the CSST that was installed in the Haymon's home, specifically at the time of the fire.

8.

On or about May 12, 2014, a fire erupted at the Property in question. M. Gene Haymon was at home at the time of a lightning storm. He heard a loud clap of thunder and soon thereafter started to smell smoke. Eventually, he discovered a fire in the living room, in the area of the chimney chase. As a result of the fire, the structure and the personal property contents of the Property were damaged extensively.

9.

Shortly after the fire, a fire investigator was retained by State Farm to determine the area of origin and cause of the fire at the Property. After conducting a thorough investigation, the investigator determined that the fire originated in the chimney chase for the fireplace located in the living room of the Property, specifically in the area where a run of Corrugated Stainless Steel Tubing ("CSST") was located. Closer examination of the CSST revealed the presence of a hole. The hole was caused by a lightning strike at or near the Property which resulted in a high voltage imposition on the CSST piping. The high voltage from the lightning arced to adjacent grounded

components, resulting in a small hole in the CSST. The fire in question was caused when the gas escaping from the hole in the CSST was ignited by the arc, resulting in the fire. Upon information and belief, the CSST which was installed in the Property was designed, manufactured and/or marketed by Defendant TITEFLEX.

10.

As a direct, proximate and producing result of the failure of the CSST installed in the Property in question, Mr. M. Gene Haymon suffered damages to his real and personal property. Pursuant to a homeowner's insurance policy in effect for the date of loss, State Farm Fire and Casualty Company compensated Mr. M. Gene Haymon for the covered damages he incurred, and now brings this suit to recover its subrogation interests from Defendant TITEFLEX.

11.

It is widely known that the electrical charge produced by lightning can be distributed across the CSST and ultimately cause it to fail as a result of one or more punctures in the thin-walled CSST. The punctures in the CSST allow natural or propane gas to escape which auto-ignites and fuels the fire and/or explosion.

12.

Plaintiff would show that on the occasion in question, Defendant TITEFLEX owed a duty to exercise ordinary care in its design, preparation, manufacture, and sale of its CSST product. The CSST product in question was defective and unsafe for its intended purposes at the time it left the control of Defendant TITEFLEX and at the time it was installed in the Haymon home. The CSST product was defective in that it failed to conform to the product design and specifications of other similar products. But for such occurrence, the probability that Defendant TITEFLEX's product would fail would have been lessened.

13.

Defendant TITEFLEX is liable unto Plaintiff for the following acts of fault:

a. Supplying the defective CSST product in question which Defendant TITEFLEX knew subjected property and lives to an unreasonable risk of harm;

b. Supplying the CSST product in question to distributors, suppliers, and installers with the knowledge that the CSST product was prone to fail due to its inferior wall thickness, was defective and unreasonably dangerous to persons and property;

c. Failing to warn the public, specifically including Mr. Haymon, of the defective condition of the CSST product, which it knew created an unreasonable risk of harm to real and personal property, and/or failed to warn the public and Plaintiffs

    that the CSST product was prone to fail when subjected to the electrical charge from lightning;

d. Failing to conduct sufficient research and development for the CSST product before introducing it into the U.S. stream of commerce;

e. Failing to provide, establish and/or follow proper and adequate controls and/or procedures so as to ensure the safety and integrity of the CSST product in the marketplace;

f. Failing to design, construct, fabricate, inspect and/or test the CSST product in question in conformity with the prevailing industry and national standards, including, but not limited to, lightning strike testing;

g. Failing to design the outer jacket of the CSST product so that it would efficiently dissipate the electrical charge produced by a direct or indirect lightning strike;

h. Failing to institute a safer alternative design for the CSST product;

i. Failing to mandate the use of a lightning protection system on structures where the CSST product was installed;

j. Failing to disseminate to consumers, specifically including Mr. Haymon, and other intermediaries adequate instructions addressing ways to protect the CSST product from failing;

k. Failing to test the CSST product to ensure its integrity and ability to withstand the electrical charge emitted from a direct lightning strike without being compromised;

l. Failing to warn consumers, specifically including Mr. Haymon, and intermediaries that a 6 AWG bonding/jumper wire will not sufficiently dissipate the electrical charge emitted from a lightning strike;

m. Failing to warn consumers, specifically including Mr. Haymon, and intermediaries, that lightning induced CSST failures can cause fires and loss of life;

n. Otherwise, failing to use due care in manufacturing and marketing the CSST product to consumers, specifically including Mr. Haymon; and,

o. Failing to make safe all premises known to have used CSST gas plumbing by recalling the product for replacement with a safer alternative design.

14.

Plaintiff would show further that Defendant TITEFLEX has an ongoing duty to warn consumers (present and past) of the inherent dangers in the CSST product, to wit: failure of the CSST product will occur when an electrical charge from a direct or indirect lightning strike travels across the product. Despite Defendant TITEFLEX knowing since 1998 that its product is prone to perforations from the electrical charge produced by lightning they have failed to warn and/or provide adequate warnings to consumers, including Mr. Haymon, about the defect in its CSST product. Defendant TITEFLEX has an absolute duty to warn consumers, and Mr. Haymon in particular, of the possibility of failure of the CSST product in certain circumstances,

and had an ongoing duty to provide adequate warnings to all persons who have this product in their home or business concerning the use of its CSST product in the absence of known and readily available safeguards such as a lightning protection system.

15.

Since 1998, Defendant TITEFLEX has had actual knowledge of the danger that its CSST product was failing from the electrical charge emitted from lightning strikes, and has done little to modify its product with appropriate safeguards to ensure against continued failures, has done nothing to warn the public and intermediaries of the real dangers associated with its' CSST product and lightning, and has refused to recall this deadly product from the market place. Plaintiffs allege that any warnings or instructions that relate to the CSST product are vague, ambiguous, deficient, and do not adequately warn consumers, specifically Mr. Haymon, of the hazards associated with the CSST product.

16.

Defendant TITEFLEX has continued to market and distribute its CSST product knowing that it will not withstand the impact of the electrical charge produced by lightning. Moreover, Defendant TITEFLEX knew that its product would fail if subjected to the electric charge from a lightning strike, and systematically devised a position to defuse and deflect this information by instituting a company-wide response that the CSST product does not fail, but is only damaged by a lightning strike.

17.

Defendant TITEFLEX engaged a public relations firm to address and contain the problem with the CSST product and to develop and implement a media plan to manage the negative impact associated with the ever-increasing CSST product failures across the country, and in the State of Louisiana.

18.

Plaintiff would show that the negligent acts and/or omissions on the part of Defendant TITEFLEX were the proximate cause of damages in an amount within the jurisdictional limits of this Court.

19.

The CSST product in question was defective and unsafe for its intended purposes at the time it left the control of Defendant TITEFLEX, and at the time it was installed in the Haymon

residence. Defendant TITEFLEX knew that its product was defective and that it presented the probability of harm to any foreseeable users unless it was free from defects. Therefore, Defendant TITEFLEX had a duty to foreseeable users, and to Mr. Haymon in particular, to inspect the CSST product in question to determine whether it would be reasonably fit for its intended purposes and warn or give fair and adequate notice to consumers of the inherently dangerous condition which existed as a result of its defective product.

20.

A defect existed in the CSST product at the time it left the possession of Defendant TITEFLEX that was a producing cause of the occurrence in question, injuries, and damages set forth herein. The defect rendered the CSST product in question unreasonably dangerous as designed, taking into consideration the utility of the product and the risk involved in its use. A safer alternative design has existed for centuries in the form of black iron pipe that would have eliminated the risk of the occurrence in question without substantially impairing the product's utility and was economically and technologically feasible at the time the product left the control of Defendant TITEFLEX by the application of existing or reasonably achievable scientific knowledge. Defendant's CSST product, in comparison to black iron pipe, has substantially greater susceptibility to perforation by lightning-induced energy than does black iron pipe, rendering Defendant TITEFLEX's product defective and posing substantially greater fire hazard, loss of property and life.

21.

Defendant TITEFLEX could have implemented one or more safer alternative designs including, but not necessarily limited to, incorporating a copper or other metallic wire running the length of the CSST ("safer alternative design"). The safer alternative design would have prevented the electrical charge from the lightning strike, whether direct or indirect, from traveling on the surface of the thin-walled CSST which, in turn, would have prevented the electric charge from perforating the CSST and igniting a fire. Among the safer alternative designs is black iron pipe; in the lightning event relevant to this case, the black iron pipe demonstrated its safety relative to the CSST when it remained viable and un-compromised after the lightning strike.

22.

Additionally, Defendant TITEFLEX could have implemented an additional safer alternative design by mandating the use of a lighting protection system (LPS) where CSST is installed. The LPS would have addressed known safety concerns and would have prevented, or at least significantly reduced, the probability of the fire which destroyed the Property. Defendant TITEFLEX had available to it sufficient information and knowledge needed in order to advise distributors, installers, and more importantly, consumers, of the safer alternative designs but has wholly failed to incorporate any such safer design with its product.

23.

The safer alternative design would have prevented or significantly reduced the risk to Mr. Haymon's property damage from the CSST product without substantially impairing the product's utility. Additionally, including one or more of the safer alternative designs with the CSST was economically and technologically feasible at the time the product left Defendant TITEFLEX's control based on the research and scientific knowledge possessed by Defendant TITEFLEX.

24.

Mr. M. Gene Haymon was not aware of the defects inherent in the CSST product in question or of any danger that could result from the use thereof at the time he used the CSST product in question. These defects were the proximate and the producing cause of Plaintiff's damages. Such being the case, Plaintiff invokes the doctrine of strict liability in tort.

25.

Defendant TITEFLEX held out to the general public, and to Mr. Haymon specifically, that the CSST product in question would conform with the qualities of the same or similar products. As a result of Defendant TITEFLEX's actions, Defendant TITEFLEX breached an express warranty as set forth in LSA-R.S. 9:2800.58.

26.

Plaintiff has suffered the damages set forth herein as a result of Defendant TITEFLEX's breach of the foregoing warranties and pleads for recovery of all damages, both actual and consequential.

27.

As a result of the acts and/or omissions on the part of Defendant TITEFLEX, Mr. Gene Haymon incurred damage to this real and personal property in an amount within the jurisdictional limits of this court.

WHEREFORE, Plaintiff, STATE FARM FIRE AND CASUALTY COMPANY AS SUBROGEE OF M. GENE HAYMON prays that, after all due proceedings are had herein, there be judgment in its favor and against Defendant, TITEFLEX CORPORATION, GASTITE DIVISION, for the sum of all damages proven at trial, together with legal interest from the date of judicial demand until paid, and for all costs of these proceedings.

Plaintiff further prays for all general and equitable relief to which it may be entitled.

Respectfully submitted,

W. Ransom Pipes
Louisiana Bar No. 17748
HANNAH, COLVIN & PIPES, LLP
10626 Timberlake Drive
Baton Rouge, LA 70810
Telephone: (225) 766-8240
Fax: (225) 766-5546

PLEASE SERVE

*Via the Louisiana Long-Arm Statute:*

TITEFLEX CORPORATION, GASTITE DIVISION
*through its registered agent:*
CT Corporation System
101 Federal Street
Boston, MA 02110

I HEREBY CERTIFY THAT THE ABOVE AND FOREGOING IS A TRUE AND CORRECT COPY OF THE ORIGINAL.

DY CLERK OF COURT, VERNON PARISH, LA.